STATE, EX REL. JOHN S. BISHOP, APPELLEE, V. LEE J. DUNN ET AL., APPELLANTS.

FILED MARCH 22, 1906.  No. 14,620.

1. Statutes: CONSTRUCTION. Statutes *in pari materia* should be construed together, and their provisions harmonized, if possible; and where the conflict between them relates to an immaterial matter, such as the name or title by which an officer shall be designated, such discrepancies will be disregarded by the courts.

2. The city council of a city of the first class, as a legislative body, has the power, by ordinance, to establish and adopt suitable rules for its own government in matters of procedure; and such rules, when adopted, will not be set aside by the courts, unless they are directly, or by necessary implication, in conflict with some provision of the statutes.

3. Mandamus will not lie to compel the president *pro tempore* of such
   city council to preside over the meetings of that body, and ap-
   point its standing committees, where that duty is neither enjoined
   upon him by statute nor by ordinance.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, JUDGE. *Reversed and dismissed.*

*E. C. Strode, Dennis J. Flaherty* and *A. S. Tibbets,* for
appellants.

*John S. Bishop, contra.*

BARNES, J.

The respondent and the intervener have brought this case
here by an appeal from a judgment of the district court for
Lancaster county awarding the relator a peremptory writ
of mandamus commanding the respondent to preside at
all meetings of the city council of the city of Lincoln
and appoint the standing committees of said council. It
appears that in the year 1902 the city council of the city
of Lincoln passed an ordinance known as "Ordinance No.
107," by which it was provided, among other things, as
follows: "The council is hereby authorized to elect one of
the members of the council as president of the council, who
shall preside at all meetings of the council, and, while so
presiding, shall have the same privileges as other mem-
bers. He shall appoint all the standing committees of the
council, and perform such other duties as are usually per-
formed by a presiding officer. In the absence of the mayor
from the city, or in any case when the mayor is from any
cause disqualified from acting as mayor, the president of
the council shall be *ex officio* mayor, and all his acts, while
so acting as mayor, shall be as binding upon the mayor
and upon the city as if done by the mayor." That ordi-
nance was in force at the time the legislature passed the
act of 1905, amending article I, ch. 13, Comp. St., com-
monly called the "City Charter." That act amended
section 13, and other sections of the charter, so that said

section 13 as amended, among other things, provides: "The mayor shall be *ex officio* president of the said council, and shall preside at the meetings thereof, and shall appoint the standing committees of said council, and in the event of a tie vote shall cast the deciding vote: Provided, however, that the council shall have the power to elect a president *pro tempore* who shall preside over the meetings of the council in the absence of the mayor and who shall exercise the powers of the mayor on his absence from the city." The amended charter also provides for the election of seven city aldermen or councilmen at large, together with seven ward councilmen; whereas, under the former charter all of the fourteen councilmen were elected from their respective wards, and were known as ward councilmen. After the officers elected under the amended charter qualified and assumed their duties, the city council was reorganized, and the mayor, the intervener herein, became *ex officio* a member of said council, presided over the meetings thereof, and appointed the standing committees above mentioned. The respondent, who had theretofore been acting as president of the council under the provisions of the old charter, and by virtue of ordinance No. 107, thereupon declined to preside at its meetings, and refused to appoint the aforesaid committees. The relator, who is one of the members of the city council, demanded that the respondent preside at the meetings of that body, and appoint its standing committees. The respondent refused to comply with that demand, and the relator thereupon commenced the present suit in the district court for Lancaster county, to compel him to perform the acts above mentioned. The mayor, Francis W. Brown, intervened; issues were properly framed, and the matter was submitted to the court upon the evidence and an agreed statement of facts. The trial resulted in a judgment awarding the relator a peremptory writ of mandamus, as prayed.

The relator now contends that the provision of section 13, above quoted, is unconstitutional and void, because it is not germane to the subject matter of the original sec-

tion. The question of the constitutionality of the amendatory act of 1905 was before us in *State v. Malone,* 74 Neb. 645, where it was upheld. It is contended, however, that the validity of that part of section 13 in question herein was not determined in that case; that what was there said was *obiter,* and was the view of one member of the court only. We may say, in passing, that whatever was there said was concurred in by every member of the court, as then constituted, and was our unanimous opinion on the questions there decided. It is true, we did not deem it necessary in that case to determine the question now presented; neither do we think we are now required to pass on it, in deciding the case at bar, for reasons which we shall presently give.

It is further contended by the relator that section 13 of the charter, as amended, and section 27 thereof are in "irreconcilable conflict, and their provisions are hopelessly repugnant." It is said, in substance, that one or the other must be declared invalid; that section 27 is not repealed by implication, and the provisions of section 13, which are in conflict with those contained in section 27, must be declared void. We decline to entertain this view of the matter. Section 13 creates the office of president *pro tempore* of the council, and provides that he shall preside over its meetings in the absence of the mayor, and shall exercise the powers of the mayor on his absence from the city. Section 27 provides: "In case of vacancy in the office of the mayor or in case of his absence or disabilty, the president of the council shall exercise the powers and duties of the office until such vacancy shall be filled or disability removed, or in case of temporary absence, until the mayor returns, and such acting mayor shall perform such other duties as may be required by law." It is our duty to read and construe the two sections together, and, if possible, to reconcile their provisions. Proceeding with this rule in view, we find that section 27 seems to supplement the provisions of section 13, and provides for contingencies not mentioned in the last named section. By

section 13 the mayor is made *ex officio* a member of the council and it is his duty to preside over its meetings, and appoint its standing committees.  It is further provided by that section that the council may elect a president *pro tempore* who shall preside over its meetings in the absence of the mayor, and shall exercise the powers of. the mayor on his absence from the city; while section 27 makes a further provision that the president of the council shall exercise the powers and duties of a mayor, not only in his absence, but in case of his disability, or where there is a vacancy in the office, until such vacancy is filled.  So it seems clear that the only conflict between the two sections is where one speaks of a president *pro tempore* of the council, and the other designates the officer as president of that body.  This distinction or discrepancy, if such it may be called, does not seem to be of sufficient consequence to entitle the relator, in the absence of any pecuniary interest on his part, to the extraordinary writ of mandamus by which to control the discretion of the city council and regulate his methods of procedure.  The question seems to be one of mere fancy, rather than of substantial right.  We seldom make use of maxims to illustrate a point, but it would seem *"de minimus non curat lex"* should be applied in this case.

Lastly, it is contended by the relator that section 13, as amended, and subdivision 53 of section 129 of the charter are in direct conflict, and therefore the amendment in question must be declared void.  Section 129 is entitled "Ordinances," and provides: "In addition to the powers herein granted, cities governed under the provisions of this act shall have power by ordinance: * * * (subdivision 53) To elect one of the members of the city council as president of the council, and who shall preside at all meetings of the council, and have equal privileges with the other members of the council, and in the absence of the mayor from the city shall perform the duties of mayor."  It seems clear, from the language above quoted, that subdivision 53 does not, of itself, create a president

of the city council or prescribe his duties; that it is without force and effect until the council has exercised the power or privilege conferred thereby. Ordinance No. 107 having been repealed the subdivision in question is inoperative, and, therefore, in no manner conflicts with the provisions of section 13, as amended.

As above stated, the city council has, since the commencement of this action, repealed ordinance No. 107, and for the purpose of harmonizing its methods of procedure with the provisons of the amended charter, on February 8 of the present year, passed an ordinance, known as "Ordinance No. 346," by which it is provided: "The council is hereby authorized to elect one of the members of the council as president *pro tempore* of the council, who shall preside at all meetings of the council in the absence of the mayor, and, while so presiding, shall have the same privileges as other members of the council. He shall perform such duties as are usually performed by a presiding officer. In the absence of the mayor from the city, or in any case when the mayor is from any cause disqualified from acting as mayor, the president *pro tempore* of the council shall be *ex officio* mayor, and all his acts, while so acting as mayor, shall be as binding upon the council and upon the city as if done by the mayor." From the foregoing it appears that, at the time the peremptory writ was allowed, there was no provision either of ordinance or statute authorizing the president to preside over the city council, and appoint its standing committees. It is contended, however, by the relator that ordinance No. 346 is void, because the inducement to its passage was the amendment to section 13 of the charter, above mentioned. As before stated, we have already held that the amendatory act in question, as a whole, is valid and constitutional, and we are satisfied that without invoking its provisions the powers conferred upon the city council by other provisions of the charter are broad enough to authorize it to pass the ordinance in question. It stands to reason that the city council, a legislative body, has the inherent power, by ordinance, to

provide for and establish rules for its own procedure; and the rules thus adopted will not be interfered with or set aside by the courts, unless they are directly, or by necessary implication, in conflict with some provision of the statute. Again, we find, from an examination of the published volume of city ordinances, which is in evidence herein, that at the time this action was commenced there was an ordinance in force in the city of Lincoln, known as "Rule 33" by which it is provided: "Standing committees shall be appointed by the mayor, from the councilmen, at the beginning of the municipal year." And by section 5 of said ordinances the mayor is required to preside at all meetings of the city council, and is given the casting vote when that body is equally divided.

So we are of opinion that the relator was not entitled to any relief when this action was commenced; that ordinance No. 346 is valid, and both the relator and the respondent are bound by the method of procedure therein provided for.

For the foregoing reasons, the judgment of the district court is reversed, the writ is denied, and the cause is hereby dismissed at the costs of the relator.

JUDGMENT ACCORDINGLY.